UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL AMERICAN INSURANCE COMPANY, as Subrogee of West Side Salvage, Inc. and for Adam Nanez, Individually,<br><br>   Plaintiff,<br><br>   v.<br><br>CONAGRA FOODS, INC.,<br><br>   Defendant/Third-Party Plaintiff,<br><br>   v.<br><br>A&J BIN CLEANING, LLC, and WEST SIDE SALVAGE, INC.,<br><br>   Third-Party Defendants. | Case No. 12-cv-326-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Court's April 24, 2013, order to show cause (Doc. 61) and the motion for summary judgment filed by third-party defendant West Side Salvage, Inc. ("West Side") (Doc. 50). Defendant/third-party plaintiff ConAgra Foods, Inc. ("ConAgra") has responded to the motion (Doc. 51). Each side has also responded to the order to show cause (Docs. 62 & 63) and has replied to the opposing party's response (Docs. 64 & 65).

**I.    Background**

As noted in the show cause order, this case arose after Adam Nanez, an employee of West Side, was seriously injured in an April 27, 2010, explosion in the course of his employment cleaning a "hot" ConAgra grain bin elevator in Chester, Illinois. NAICO, West Side's workers' compensation insurer, brings this suit in its capacity as subrogee of West Side and for Nanez. It believes ConAgra was negligent in a variety of ways. ConAgra has, in turn, filed a third party

complaint seeking indemnity from West Side (Third-Party Count I) and contribution from A&J Bin Cleaning, LLC ("A&J") and West Side (Third-Party Count II) based on their alleged wrongful conduct in cleaning the "hot" bin.

There are two questions at issue in the pending motion for summary judgment on Third-Party Count II: whether Iowa or Illinois law applies to the contribution claim against West Side and whether, if Illinois law applies, there is a cap on West Side's liability to ConAgra. In its show cause order, the Court noted that these very issues between these very parties were litigated and resolved in a related case involving Justin Becker, a West Side coworker of Nanez, who was injured by the very same grain bin explosion, *Jentz v. ConAgra Foods, Inc.*, No. 10-cv-474-MJR-PMF. In *Jentz*, Judge Reagan decided that Illinois law governed workers' compensation issues relating to the issue of contribution by West Side, *see Jentz v. ConAgra Foods, Inc.*, No. 10-cv-474-MJR-PMF, 2012 WL 3230447, at *3-*4 (S.D. Aug. 6, 2012), and that West Side was entitled to the liability cap provided under Illinois law as set forth in *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (Ill. 1991), *id.* at *4-6. This Court then ordered the parties to show cause why Judge Reagan's decisions should not collaterally estop the parties from relitigating the same issues in this case.

Before turning to the issues presented in the pending motion, a recap of the relevant *Jentz* events is helpful. Midway through the litigation, ConAgra raised the issue of whether West Side had waived the protection of the *Kotecki* liability cap with respect to ConAgra's contribution claim for Becker's injuries by agreeing to an indemnification clause in its contract with ConAgra (Case No. 10-cv-474-MJR-PMF; Doc. 186). West Side's response assumed that Illinois law – of which *Kotecki* is a part – applied to the matter (Case No. 10-cv-474-MJR-PMF; Doc. 236). The case was tried by a jury, which decided, among many other things, that there was a valid contract

2

between ConAgra and West Side at the time of the explosion (Case No. 10-cv-474-MJR-PMF; Doc. 478).  Following the jury verdict, Judge Reagan gave the parties an opportunity to comment on the form of his proposed judgment prior to entry (Case No. 10-cv-474-MJR-PMF; Doc. 486). In the briefing that followed, West Side raised for the first time the argument that Iowa law applied to ConAgra's contribution claim against West Side and foreclosed contribution liability for West Side (Case No. 10-cv-474-MJR-PMF; Docs. 495, 502).  ConAgra, for its part, argued that West Side had waived the Iowa law issue, that West Side's argument has no merit because Illinois law was the appropriate choice of law, and that West Side had waived the *Kotecki* liability cap in its contract with ConAgra (Case No. 10-cv-474-MJR-PMF; Doc. 501).

Judge Reagan settled the parties' dispute by ruling, among other things, that West Side waived its right to raise a choice of law defense based on Iowa law and that West Side did not waive the protection of the *Kotecki* cap by agreeing to the indemnification clause (Case No. 10-cv-474-MJR-PMF, Doc. 503). *Jentz*, 2012 WL 3230447, at *3-*6.

The Court now examines the preclusive effect of these rulings.

## II.   Collateral Estoppel

"Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  A court may raise the issue *sua sponte* even if a party fails to.  *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996).

> For the doctrine to apply, four factors must be present:
>
> (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.

3

*Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (internal quotations omitted); *see Parklane Hosiery*, 439 U.S. at 326 n.5. Due process prohibits the application of collateral estoppel against a party who did not have a full and fair opportunity to be heard in the first litigation. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

**III.    Choice of Law**

West Side has an interest in the application of Iowa law, which it argues provides that it cannot be liable in contribution for an injury to one of its employees as long as it provided workers' compensation benefits. *See Mermigis v. Servicemaster Indus., Inc.*, 437 N.W.2d 242 (Iowa 1989) (citing Iowa Code § 85.20). Of course, West Side does not want Judge Reagan's ruling that Illinois law applies to govern, so it argues that collateral estoppel does not apply to this issue because the choice of law was not decided in *Jentz*. It believes Judge Reagan did not actually decide the choice of law issue because he did not conduct a choice of law analysis, instead finding West Side had waived its argument by not raising the choice of law issue earlier in the case. West Side argues that it has not waived the issue in the case at bar because it has pled as an affirmative defense that ConAgra failed to state a claim against it and because it has not ignored or taken a contradictory position on the issue in summary judgment briefing as it had done in *Jentz*. Therefore, West Side believes it is not bound by Judge Reagan's finding of waiver.

ConAgra argues that West Side has again waived the argument that Iowa law applies because it did not raise it in its answer, a conclusion that cannot be challenged after Judge Reagan's ruling that West Side's affirmative defenses – nearly identical to the affirmative defenses in this case – do not adequately raise the choice of law defense. The preclusive ruling, ConAgra argues, is the decision that affirmative defenses pleading the failure to state a claim and the *Kotecki*

4

doctrine did not raise the choice of law issue as a defense.

No party disputes that the choice of law issue presented in this case is the same as that presented in *Jentz*, that the issue was actually litigated in *Jentz*, and that the parties to the dispute are the same as they were in *Jentz*. West Side contends, however, that Judge Reagan did not actually and necessarily decide the choice of law issue.

Judge Reagan actually decided that Illinois law applied to a contribution claim against West Side stemming from an Iowa worker's injury, a decision necessary to the final judgment on the merits in *Jentz*. In response to West Side's argument that Iowa law applied, Judge Reagan found that West Side had waived the argument because its pleading of a "failure to state a claim" defense was not sufficient to raise the choice of law issue and because it had taken the position in summary judgment briefing that Illinois law applied. *Jentz*, 2012 WL 3230447, at *3. This was a contested issue that Judge Reagan decided in favor of ConAgra. Neither party has cited any case regarding the preclusive effect of a decision based on waiver, but the Court believes that in this situation, the fact that Judge Reagan's ruling was based on waiver as opposed to an analysis of the merits of the choice of law issue should make no difference to the collateral estoppel issue. West Side has not argued that it did not have a full and fair opportunity to litigate the choice of law question in *Jentz*. It had that opportunity, and it vigorously litigated the issue, albeit post-trial. Now, where the identical issue is disputed between the same parties, West Side should not be given a second bite at the apple of which it belatedly attempted to partake in *Jentz*. Judge Reagan decided the issue, and the doctrine of issue preclusion therefore bars relitigation of that issue in this case.

Even if Judge Reagan's ruling had not collaterally estopped West Side from arguing that Iowa law applies to ConAgra's contribution claim, the Court would reject West Side's position on

5

the merits. A federal court exercising diversity jurisdiction in Illinois must apply the substantive law of Illinois, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Illinois follows the "most significant relationship" test of the Restatement (Second) of Conflict of Laws ("Restatement") when determining which law to apply. *See Ingersoll v. Klein*, 262 N.E.2d 593, 595-96 (Ill. 1970); *Barbara's Sales, Inc. v. Intel Corp.,* 879 N.E.2d 910, 919 (Ill. 2007); Restatement § 145(a) (1971). In a tort case, under this approach, the law of the state where the injury occurred controls unless another state has a more significant relationship to the occurrence. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007); *Esser v. McIntyre,* 661 N.E.2d 1138, 1141 (Ill. 1996); Restatement § 145(a). The Court should consider "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Esser,* 661 N.E.2d at 1141; *accord* Restatement § 145(b).

All parties agree that Illinois has the most significant relationship with the underlying tort that resulted in Nanez's injury, so Illinois law should apply to that dispute. The parties dispute, however, the state with the most significant relationship to the contribution claim by ConAgra against West Side in light of the Iowa-centered employment relationship between Nanez and West Side. Where the highest court of the state has not spoken on this exact issue, the Court must apply the law as it believes that court would apply it if it were hearing the issues, giving great weight to decisions of intermediate appellate courts unless there are persuasive reasons to believe the highest court would rule differently. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).

The Illinois Supreme Court has not taken a position on this issue, but an Illinois Appellate Court has. In *Palmer v. Freightliner LLC*, 889 N.E.2d 1204 (Ill. App. Ct. 2008), the Illinois

Appellate Court for the First District examined a case nearly identical to the case at bar: an out-of-state plaintiff employed by an employer of the same state (Ohio, in *Palmer*) injured in Illinois at a third-party's business. *Id.* at 1205-06. Ohio law, like Iowa law, provided that employers who paid workers' compensation claims were immune from third-party actions for contribution based on an employee's injury. *Id.* at 1207-08. After a thorough analysis of the references and cross references in the Restatement, the *Palmer* court held that *all* of the facts surrounding alleged tortious conduct, not just those surrounding the contribution issue, should be examined to determine the state with the most significant relationship to the entire case, thus, the state's law that should be applied even to third-party contribution claims. *Id.* at 1210 (citing Restatement §§ 6, 145, 173). Those relevant facts as set forth in the Restatement § 145(b) are the place of the injury, the conduct causing the injury, the citizenship of the parties and the place where the relationship was centered. *Id.* at 1210-11. In *Palmer*, the injury occurred in Illinois, the conduct causing the injury was alleged to have occurred in Illinois and Ohio, the parties were citizens of various states but the relevant corporate parties did business in Illinois, and the center of the relationship favored Illinois. *Id.* The Court then viewed these relationships in light of the relevant state policies, including Ohio's interest in protecting from tort claims employers that comply with its workers' compensation laws, *see Kendall v. U.S. Dismantling Co.*, 485 N.E.2d 1047 (Ohio 1985), and Illinois' interest in protecting compliant employers *and* in protecting third-party tortfeasors from bearing more than their share of injury costs, *Virginia Sur. Co. v. Northern Ins. Co. of N.Y.*, 866 N.E.2d 149, 154 (Ill. 2007) (citing *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (Ill. 1991)). *Id.* at 1211-12. The *Palmer* court concluded that Illinois law should apply. *Id.* at 1212.

The cases cited by West Side in support of its position, *Moore v. Wausau Club*, 777 F.

Supp. 619 (N.D. Ill. 1991), and *DeMyrick v. Guest Quarters Suite Hotel*, 850 F. Supp. 724 (N.D. Ill. 1994), take a different approach to determining the law to apply to third-party claims against an employer for contribution. Those cases view the choice of law issue for employer contribution claims as a separate issue from the choice of law issue for the underlying tort, an approach contrary to *Palmer*'s. *See Moore*, 777 F. Supp. at 619; *DeMyrick*, 850 F. Supp. at 726. They also give great weight to the location of the workers' compensation coverage – citing it as the "single most important factor" – in deciding the law to apply to contribution claims despite other relationships to other relevant states. *See Moore*, 777 F. Supp. at 621; *DeMyrick*, 850 F. Supp. at 727. However, neither of these decisions is rendered by an Illinois state court, and neither provides a persuasive reason to believe the Illinois State Court would not use the *Palmer* approach. Furthermore, *Moore* relies primarily on a pre-Restatement case, *Moore*, 777 F. Supp. at 621 (citing *Kabak v. Thor Power Tool Co.*, 245 N.E.2d 596 (Ill. App. Ct. 1969)), that does not explore the "most significant relationship" test in the depth that *Palmer* did. Thus, the Court believes the *Palmer* approach reflects how the Illinois Supreme Court would decide the choice of law issue in the case at bar.

Under *Palmer*'s approach, the Court considers that the Nanez's injury occurred in Illinois. The work he was doing when he was injured was pursuant to a contract between West Side and ConAgra that may have been negotiated and executed in states other than Illinois (likely Iowa and/or Nebraska), but the contract was expressly and solely for work to be performed at ConAgra's facility in Chester, Illinois. Thus, Illinois has a strong relationship to the events in this case and, as *Palmer* notes, is therefore of great importance to "the most significant relationship" test. *See Palmer*, 889 N.E.2d at 1210.

Also of note is the location of the conduct causing the injury. The alleged wrongful

conduct of ConAgra, as pled in the Complaint, and West Side, as pled in the Third-Party Complaint, centers on the parties' on-site actions to respond to a problem in a "hot" grain bin at ConAgra's Chester, Illinois, facility.  Thus, the conduct allegedly causing the injury occurred in Illinois.

      The parties are citizens of various states.  Nanez and West Side are citizens of Iowa, ConAgra is a citizen of Delaware and Nebraska, A&J is a citizen of Minnesota, and NAICO is a citizen of Oklahoma.  No relevant party is a citizen of Illinois, although clearly some do business here.  Iowa has a relationship to this controversy in light of the fact that two of its citizens are involved, but that relationship is not strong and, in light of the alleged facts of the case, is certainly not clearly superior to the relationships with other states.

      Finally, the employment relationship between Nanez and West Side is clearly centered in Iowa.  However, the more important relationships in this case are centered in Illinois.  That is where West Side agreed to perform work for ConAgra and where it sent Nanez to perform that work.  Illinois is where Nanez's injury occurred, and that injury was the cause of NAICO having to pay Nanez's workers' compensation claim, although that claim was paid under Iowa law.  The center of the relationship factor slightly favors Illinois.

      The Court views these factors in light of policy considerations.  Here, the concerns are the same as those in *Palmer*:  Iowa's interest in protecting employers that comply with its workers' compensation laws from tort claims and Illinois' interest in protecting compliant employers *and* in protecting third-party tortfeasors from bearing more than their share of injury costs.  *Id.* at 1211-12.  As in *Palmer*, the Court concludes that Illinois has the most significant relationship with this case and its law should apply to the contribution issue.  When ConAgra decided to conduct business in Illinois, it had the expectation that Illinois law would allow it to bring a

9

contribution action against an employer who may have partly caused an injury to one of its employees.  Likewise, when West Side agreed to perform work in Illinois, it subjected itself to the tort laws of Illinois, including the related Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq.*, and could not reasonably have expected Iowa law to always apply outside Iowa borders.  By the same token, although not totally protected from liability as it would have been under Iowa law, West Side's liability would be capped by *Kotecki* (an issue discussed later in this order).

This conclusion makes sense in light of the facts of the case.  The Illinois connections to this case are numerous, and the result might have been different if the connections had not been so strong.  For example, if ConAgra had contracted with West Side for work in a Missouri facility, and Nanez had been in a traffic accident while running a work errand into Illinois where ConAgra and West Side had somehow both been at fault.  In that case, it would have been fortuitous that the accident occurred in Illinois, which would have otherwise not had any connection with Nanez's injury.  In that case, the other circumstances might well have overcome the place of the injury as the most significant relationship.  This case, however, does not present that situation.

For these reasons, the Court finds that Judge Reagan's decision on the choice of law issue collaterally estops West Side from arguing otherwise in this case.  Even if collateral estoppel had not applied, Illinois has the most significant relationship to the controversy, and West Side is therefore subject to Illinois law with respect to ConAgra's contribution claim.  West Side's motion for summary judgment based on the application of Iowa law will be denied.

**IV.** ***Kotecki* Waiver**

This portion of West Side's motion concerns the intersection of workers' compensation and joint tortfeasor liability under Illinois law.  The Illinois Court of Appeals has described this terrain as follows:

> "The concept of contribution contemplates that each party whose fault contributed to an injury should pay its *pro rata* share of the common liability." (Emphasis in original.) *Virginia Surety Co. v. Northern Insurance Co. of New York,* 224 Ill.2d 550, 557, 310 Ill.Dec. 338, 866 N.E.2d 149 (2007). Thus, when an employee is injured in the course of his employment and seeks compensation from a third party, the Contribution Act provides that the third party may file a third-party suit against the employer for contribution toward the employee's damages. 740 ILCS 100/1 *et seq*. (West 2008). However, an employer's maximum liability in a third-party suit for contribution is limited to its liability to its employee under the Workers' Compensation Act. *Kotecki v. Cyclops Welding Corp.,* 146 Ill.2d 155, 165-66, 166 Ill.Dec. 1, 585 N.E.2d 1023 (1991). Further, section 5(b) of the Workers' Compensation Act allows the employer to claim a lien on any recovery the employee receives from the third party, equal to the amount the employer paid or will pay the employee in workers' compensation. 820 ILCS 305/5(b) (West 2008). An employer can also waive its lien on the employee's recovery and not seek reimbursement of its workers' compensation payments. 820 ILCS 305/5(b) (West 2008); *LaFever v. Kemlite Co.,* 185 Ill.2d 380, 399, 235 Ill.Dec. 886, 706 N.E.2d 441 (1998). By waiving its section 5(b) lien, an employer can avoid liability to a third party for contribution. *LaFever,* 185 Ill.2d at 399, 235 Ill.Dec. 886, 706 N.E.2d 441; see also *Gallagher v. Lenart,* 226 Ill.2d 208, 231, 314 Ill.Dec. 133, 874 N.E.2d 43 (2007).

*McMackin v. Weberpal Roofing, Inc.*, 959 N.E.2d 186, 191-92 (Ill. App. Ct. 2011), *app. denied*, 968 N.E.2d 82 (Ill. 2012).

With respect to the *Kotecki* issue – that is, whether West Side's liability is limited to its liability under the Workers' Compensation Act – the parties' roles are reversed. Here, ConAgra has an interest in avoiding the application of the *Kotecki* liability cap which would limit West Side's liability. It does not want Judge Reagan's ruling on this issue to govern, so it argues that collateral estoppel does not apply. It believes the issue before the Court now was not raised, litigated or decided in *Jentz*: whether "West Side waived its *Kotecki* protection by bringing this suit via its subrogee-insurer NAICO." ConAgra's Resp. to Show Cause Order at 2 (Doc. 63). It argues the *Jentz* issue was simply whether *Kotecki* was waived by the indemnity clause in the contract between West Side and ConAgra. It further argues that the relief NAICO seeks from ConAgra in this case exceeds what it sought in *Jentz*, solely the amount of the workers'

11

compensation lien it held as West Side's subrogee. In support of its argument, ConAgra dissects NAICO's claim against it (a subject more appropriately addressed in its own dispositive motion) but pays little attention to its contribution claim against West Side. Con Agra further notes that the case at bar also presents the issue of whether West Side should be dismissed from the action in the absence of a workers' compensation lien waiver.

West Side, for its part, argues that NAICO's status as West Side's subrogee makes it the real party in interest in the claims against ConAgra and does not deprive West Side itself of the protection of *Kotecki* in ConAgra's third-party contribution claim.

In resolving this dispute, it is important to remember the limited scope of the matters before the Court at the moment. The only claim for which West Side seeks a disposition in this motion is ConAgra's third-party claim for contribution against it, not every claim in this case. The only relief West Side seeks is a declaration that its liability cannot exceed its workers' compensation lien, not dismissal from this case. Nor does it seek any dispositive ruling on the claims in NAICO's complaint.

In light of the limited scope of the motion, the Court finds collateral estoppel bars relitigation of the issue of whether West Side is entitled to *Kotecki* protection. ConAgra's contribution claim involves the same parties: West Side and ConAgra. Those parties litigated the issue of whether West Side was entitled to *Kotecki* protection or had waived it, and Judge Reagan decided the protection applied, albeit rejecting a different waiver theory than the one raised in this case. *Jentz*, 2012 WL 3230447, at *4-*6. As with the choice of law issue, the fact that Judge Reagan's decision on the issue rested on different reasoning in *Jentz* should not give ConAgra a second bite at the apple. Finally, the *Kotecki* issue was clearly essential to the *Jentz* judgment, which expressly limited West Side's contribution liability to ConAgra to "an amount

not to exceed West Side Salvage, Inc.'s workers' compensation liability." *Jentz* Am. J. at 3 (Case No. 10-cv-474-MJR-PMF; Doc. 539).

To the extent that ConAgra's present arguments differ from the arguments in *Jentz* because NAICO brings this suit as West Side's subrogee and seeks more than West Side's workers' compensation liability, the Court considers their merits and rejects them. It is true that this case does not present the quintessential *Kotecki* application – a worker suing a third party who then seeks contribution from the worker's employer. *See, e.g., McMackin*, 959 N.E.2d at 188. Instead, NAICO, West Side's subrogee, is suing to enforce West Side's workers' compensation lien.

Nevertheless, ConAgra has not presented any theory under which *West Side* could have waived its right to the protection of the *Kotecki* cap because *NAICO*, a separate entity not under West Side's control, brought a suit stepping into West Side's shoes. A waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *United States v. Olano*, 507 U.S. 725, 733 (1993). There is no evidence that West Side intentionally relinquished any right or privilege by NAICO's independent acts. In fact, West Side may be trapped in this case unless NAICO waives the workers' compensation lien it holds as West Side's subrogee. As noted above, ConAgra's arguments regarding claims to excessive relief may be better directed toward defeating part of NAICO's claim against it, not in resisting a declaration that West Side is entitled to the protection of the *Kotecki* cap.

In sum, West Side has demonstrated its right to *Kotecki* protection but not its right to dismissal from this case. West Side will remain in this case with the understanding that its maximum liability, if any, in ConAgra's third-party claim for contribution is limited to its workers' compensation liability.

V.     **Conclusion**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** West Side's motion for summary judgment on Third-Party Count II (Doc. 50).   The motion is **DENIED** to the extent it seeks the application of Iowa law to ConAgra's contribution claim against West Side in Third-Party Count II.   The motion is **GRANTED** to the extent it seeks a ruling that West Side is entitled to the protection of the *Kotecki* liability cap in Third-Party Count II.

**IT IS SO ORDERED.**
**DATED: June 25, 2013**

                                                s/J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**